IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33004-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRENDA KAY VASSAR, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J.—Brenda Vassar appeals her motor vehicle theft conviction, assigning error to alleged flagrant and ill-intentioned prosecutorial misconduct. She contends the State (1) provoked her into calling its witnesses liars on cross-examination, (2) argued facts not in evidence, improperly using the prestige of its office, and (3) misstated the law and shifted the burden of proof. We disagree and affirm.

## FACTS

Charlene Hammons bought a truck from Ms. Vassar, paying $500 cash in exchange for a signed bill of sale and the keys. The bill of sale stated Ms. Vassar would provide the title within two days, but no title was delivered. Ms. Hammons soon resold the truck to Terry Bell, conditioned on Ms. Hammons obtaining title from Ms. Vassar. A few days later, Ms. Vassar saw the truck on a Centralia street. Ms. Vassar used a key she had retained to take the truck to a friend's place. After learning the truck was

missing from Mr. Bell, Ms. Hammons confronted Ms. Vassar, who admitted she took the truck. Ms. Vassar refused to return the truck, claiming she was liable for the truck because she retained title and it was not yet insured.

Ms. Hammons reported the truck stolen. Officer Mike Lowrey handled the case. Officer Lowrey contacted Ms. Vassar, who told him she had sold the truck but had not been paid. After Officer Lowrey told Ms. Vassar about Ms. Hammons' bill of sale, Ms. Vassar said she could not remember if she had been paid and the bill of sale was forged. Officer Lowrey compared the signature on the bill of sale to Ms. Vassar's signature on her driver's license, concluding the bill of sale was valid. Ms. Vassar still refused to return the truck or give Ms. Hammons title without proof of insurance.

Upon returning from vacation a month later, Officer Lowrey learned the truck still had not been returned. The officer contacted Ms. Vassar, who once again refused to return the truck. Officer Lowrey told Ms. Vassar he had probable cause to arrest her for vehicle theft but did not get an arrest warrant. Soon, the officer received word the truck was parked in a Goodwill parking lot. Ms. Hammons retrieved the truck, finding it damaged and not drivable. The next day, Ms. Vassar turned herself into the jail.

Based on the above, the State charged Ms. Vassar with theft of a motor vehicle. At trial, Ms. Vassar denied receiving money from Ms. Hammons and testified Ms. Hammons had forged her signature on the bill of sale. On direct examination, Ms. Vassar stated she turned herself in because "Officer Lowrey told everyone that he came

2

into contact with that there was a warrant out for my arrest and anyone helping me would be arrested as well." Report of Proceedings (RP) at 94.

On cross-examination, the State, without objection, questioned Ms. Vassar:

Q: Now, you say Officer Lowrey was telling everyone – those are your words, "everyone" – that there's a warrant out there, right?
A: Yes.
Q: In fact, he didn't have a warrant, did he?
A: No, he didn't.
Q: It was probable cause, right?
A: It was a lie, is what it was.
Q: You're calling this officer here a liar; is that what you're saying?
A: Yes, I am.
Q: So the officer is not telling the truth, correct?
A: That's correct.
Q: Charlene Hammons, she's not telling the truth, right?
A: That's correct.
Q: The only person in the courtroom we should trust is you, right?
A: I believe so.

RP at 101-02.

In its closing argument, the State argued Ms. Vassar claimed everybody but her was "mistaken" and suggested this claim made no sense. RP at 141-42. The State argued nothing showed Ms. Hammons forged the bill of sale and Ms. Vassar did nothing to back up her story. The State told the jury Ms. Hammons was a bonded repossession agent, but the evidence solely showed she repossessed vehicles.

The jury found Ms. Vassar guilty as charged, and the trial court convicted her. In her appeal brief conclusion, Ms. Vassar insufficiently asks us to consider ineffective assistance of counsel without citation to law or supporting argument. Thus, our sole focus is misconduct.

3

ANALYSIS

Considering Ms. Vassar did not object at trial, our issue is whether the prosecutor committed flagrant, ill-intentioned, and cumulative misconduct necessitating reversal and remand for a new trial.

To succeed on a prosecutorial misconduct claim, "a defendant is required to show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Glasmann*, 175 Wn.2d 696, 678, 286 P.3d 673 (2012). In order to show prejudice, a defendant must show a substantial likelihood the misconduct affected the jury's verdict. *Id.* Because Ms. Vassar did not object at trial to any of the alleged misconduct, the complained-of errors are waived unless she establishes the misconduct is "so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Thus, "if the misconduct cannot be remedied and is material to the outcome of the trial," Ms. Vassar was denied her right to a fair trial. *State v. Suarez-Bravo*, 72 Wn. App. 359, 367, 864 P.2d 426 (1994).

We "review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). We give prosecutors "wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury." *Id.*

4

First, Ms. Vassar contends improper cross-examination provoked her into calling the State's witnesses liars during her cross-examination. The practice of asking one witness whether another witness is lying "is contrary to the duty of prosecutors, which is to seek convictions based only on probative evidence and sound reason." *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991). Thus, cross-examination "designed to compel a witness to express an opinion as to whether other witnesses were lying" constitutes improper conduct. *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993). Liar questions on cross-examination are harmless if they "were not so egregious as to be incapable of cure by an objection and an appropriate instruction to the jury." *State v. Stover*, 67 Wn. App. 228, 232, 834 P.2d 671 (1992). In determining whether these questions are harmless, courts consider several factors including "whether the prosecutor was able to provoke the defense witness to say that the State's witnesses must be lying, whether the State's witness's testimony was believable and/or corroborated, and whether the defense witness's testimony was believable and/or corroborated." *Padilla*, 69 Wn. App. at 301.

Ms. Vassar likens her case to *Suarez-Bravo*, 72 Wn. App. 359, and *Padilla*, 69 Wn. App. 295. In *Suarez-Bravo*, the State not only repeatedly attempted to get the defendant to call the police witnesses liars but misrepresented the police witnesses' testimony to create a nonexistent conflict. *Suarez-Bravo*, 72 Wn. App. at 366. This, coupled with the State's irrelevant questioning about the defendant's Hispanic heritage and living/working situation, required reversal. *Id.* at 367-68. In *Padilla*, the prosecutor

5

successfully provoked the defendant to testify the police witness lied. *Padilla*, 69 Wn. App. at 301. The court reversed, finding because "the case essentially turned on the credibility of the two witnesses" and neither of the witnesses' testimony was corroborated, there was a substantial likelihood the jury's verdict was affected. *Id.* at 302.

Unlike in *Suarez-Bravo*, Ms. Vassar non-responsively brought up lying in answer to the State's proper question concerning probable cause. Ms. Vassar had testified about Officer Lowrey's "PC" on direct examination. RP at 95. The prosecutor properly asked about this on cross-examination in order to clarify Ms. Vassar's contradicting direct testimony. *See* ER 611. The purpose of the limited follow-up liar questioning was to clarify what Ms. Vassar meant when she said "it was a lie." RP at 102. Thus, the follow-up questioning was not misconduct. While the defense can object to the form of a State question, it cannot object to a non-responsive answer to a proper question. On the other hand, the State can object to a non-responsive answer to its question and ask it be stricken. The same rules apply when the roles are reversed and the defense is cross-examining a State's witness.

Here, instead of objecting to non-responsiveness, the State choose to attempt limited clarification, risking a misconduct claim. Had defense counsel objected, any problem could have been eliminated. Given all, we conclude any improper questioning was harmless. Unlike in *Suarez-Bravo*, no additional instances of misconduct followed necessitating reversal. And unlike in *Padilla*, the prosecutor did not repetitively ask Ms.

6

Vassar whether Ms. Hammons and the officer were lying. This is not flagrant and ill-intentioned misconduct.

Second, Ms. Vassar contends the State argued prejudicial facts not in evidence when it told the jury Ms. Hammons was "bonded." RP at 146. She obscurely argues by telling the jury Ms. Hammons was bonded, the prosecutor impermissibly used the prestige of his office to show Ms. Hammons was the more credible witness.

"It is [ ] well established that a prosecutor cannot use his or her position of power and prestige to sway the jury." *Glasmann*, 175 Wn.2d at 679. It is misconduct for a prosecutor to submit extrinsic evidence to a jury. *State v. Pete*, 152 Wn.2d 546, 552, 98 P.3d 803 (2004). "[E]xtrinsic evidence is defined as information that is outside all the evidence admitted at trial." *Id.* at 552-53 (quoting *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 270, 796 P.2d 737 (1990)). The rule is "consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been prejudiced." *State v. Rinkes*, 70 Wn.2d 854, 862-63, 425 P.2d 658 (1967).

In closing, the State said: "[Ms. Hammons] works part time repossessing vehicles. She has to be bonded if you're going to be a repo person. Is she going to risk her bond on this old truck? There's no proof that she forged this bill of sale." RP at 146. While no party elicited the information about her being bonded, Ms. Hammons testified on both direct and cross-examination about her repossession business. Repossession businesses are usually bonded and insured. We conclude the bonding

7

argument does not rise to the level of "flagrant and ill-intentioned" misconduct and is not prejudicial like the error in *Rinkes*. The jury had the opportunity to observe the witnesses regarding credibility. A stray comment about Ms. Hammons being "bonded" is unlikely to have affected the jury's credibility determinations. Again, a timely objection and instruction would have cured any error.

Third, Ms. Vassar contends the prosecutor misstated the law to the jury and shifted the burden of proof when (1) arguing that to believe Ms. Vassar, it would need to believe all the State's witnesses were "mistaken" and (2) arguing Ms. Vassar failed to present any corroborating evidence to her testimony.

Due process requires the prosecution prove every necessary element of the charged crime beyond a reasonable doubt. *Glasmann*, 175 Wn.2d at 713. "Shifting the burden of proof to the defendant is improper argument, and ignoring this prohibition amounts to flagrant and ill intentioned misconduct." *Glasmann*, 175 Wn.2d at 713. By misstating the basis on which a jury can acquit, the State "insidiously shifts the requirement that [it] prove the defendant's guilt beyond a reasonable doubt." *Id.* Therefore, it is improper for the prosecutor to argue that in order to acquit a defendant or to believe a defendant's testimony, the jury must find the State's witnesses are lying. *See State v. Fleming*, 83 Wn. App. 209, 214, 921 P.2d 1076 (1996); *cf. State v. Wright*, 76 Wn. App. 811, 824-26, 888 P.2d 1214 (1995) (finding unobjectionable a closing argument where the prosecutor argued that to believe the defendant, the jury would need to believe the State's witnesses were mistaken because the argument "did not

8

present the danger that the jury would be misled in believing that it had to determine if witnesses were lying in order to render a verdict").

However, even improper remarks do not justify reversal "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements." *Russell*, 125 Wn.2d at 86. While defendants are not obligated to produce any evidence, a prosecutor is allowed to comment on a defendant's failure to support her own factual theories: "When a defendant advances a theory exculpating [her], the theory is not immunized from attack. On the contrary, the evidence supporting a defendant's theory of the case is subject to the same searching examination as the State's evidence." *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990).

Ms. Vassar argues her case is like *Fleming*, but it is distinguishable. Here, the State argued the jury needed to believe everyone else was "mistaken" (not lying like in *Fleming*) in order to believe Ms. Vassar's version of events.[1] Thus, this case is more like *Wright*. Witness credibility was central. "[T]here is nothing misleading or unfair in

---

[1]     [Ms. Vassar] claims everybody is mistaken but her. Officer Lowrey got it wrong. Dispatch, you know, people trained to take messages on a computer when they come in, never got her phone call. . . .

So dispatch is mistaken. [Ms. Hammons] is mistaken, because I guess there was no bill of sale, there was no money transferred, so [Ms. Hammons] is mistaken. Lowrey is mistaken. Mercer is mistaken. The Chehalis Police Department dispatch is mistaken. Everybody is mistaken but her. Does that makes sense to you? The state submits it does not.

What's going on here is the only person that has something at stake in this whole thing is making all this up because she's caught now. She has to work her way out of it.

RP at 141-42.

9

stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject the other." *Wright*, 76 Wn. App. at 825.

Finally, Ms. Vassar complains the State argued she did nothing to prove her innocence.[2] *Fleming* does not stand for the proposition that the State may never comment on a defendant's failure to produce evidence. The defendants in *Fleming* never testified. Commenting on the defendants' failure to produce evidence under those circumstances infringed on the defendants' privilege against self-incrimination. Ms. Vassar testified, bringing up an alleged forged bill of sale. A prosecutor is allowed to comment on the evidence presented; this includes commenting on whether Ms. Vassar's version of events was supported.

Given this record, we cannot conclude the State's cross-examination or closing argument constituted reversible misconduct. Considering our holding, we do not address Ms. Vassar's cumulative error contention.

---

[2] Now, [Ms. Vassar] was telling you this stuff, but she didn't back it up with anything. Her story is that, well, gee, you know, this bill of sale was created by photocopying the registration on top of that. How easy would it have been for her to take the registration down to the police department and show them that, line it up? What would you have done if you had been in [Ms. Vassar's] shoes? The state submits that each one of us would have – if a police officer is accusing me of stealing a car and they think I forged it, I'd have gone down there with the documentation and said, "You match those signatures up and go arrest her."

[Ms. Vassar] didn't do that, because it didn't happen that way.

RP at 147.

10

No. 33004-4-III
*State v. Vassar*

Affirmed.

Brown, J.

_____
Brown, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

11