IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73121-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH LYNN PROCK, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 2, 2016 |

SCHINDLER, J. — Kenneth Lynn Prock seeks reversal of the jury conviction for residential burglary in violation of RCW 9A.52.025. Prock contends prosecutorial misconduct during closing argument denied him of a fair trial. In the alternative, Prock argues his attorney provided ineffective assistance of counsel by failing to object to the prosecutor's argument. We affirm.

## FACTS

In January 2014, Casey Robinett and his girlfriend Monica Certain rented a house located at 6103 Grove Street in Marysville. Robinett and Certain would drive to work together and return home around 6:00 or 7:00 p.m.

When Robinett and Certain returned home from work on May 8, 2014, they saw an older gold-colored sedan they did not recognize parked in their driveway. Robinett

and Certain parked in their driveway next to the gold car. Robinett noticed the back door to the house was open.

Robinett told Certain to call the police. Robinett grabbed a hammer and entered the house through the back door. Robinett shouted, "Who the hell is here?" Kenneth Prock walked out of the couple's bedroom and said, "I'm here." When Robinett asked Prock why he was in the house, Prock said that the landlord sent him to "clear out the house." Robinett replied, "Bullshit. I know the landlord." As he left house, Prock said he "was sent here to do it" by his "friend from Arlington." Prock then got in his car and drove away.

At 7:47 p.m., Marysville Police Department officers responded to the reported burglary in process. The 911 operator told Officer Charles Smith that the reported suspect was driving a tan Saturn car. On his way to the house, Officer Smith saw a tan Saturn traveling in the opposite direction. Officer Smith turned around and followed the car. As Officer Smith was turning around, the Saturn made an "immediate right turn" onto a "side residential street." Officer Smith stopped the Saturn a short distance away. Officer Smith confirmed the car's license plate number matched the license number of the vehicle involved in the reported burglary. Officers then arrested Prock and advised him of his Miranda[1] rights.

Prock told Officer Smith that an individual named "Steve" gave him "permission to be in the house." But Prock said he did not know Steve's last name, phone number, or address. According to Prock, Steve told him "someone had moved out of the house" and Prock could "take what he wanted." Prock stated he was in the house for about three minutes and did not have time to take anything.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged Prock with residential burglary in violation of RCW 9A.52.025. At trial, Robinett and Certain identified Prock as the individual that had been inside their house. Robinett and Certain testified that Prock did not have permission to enter the house and did not have permission to take or "go through" any items from the house. Robinett testified nothing was missing from the home but several items were "out of order." Robinett stated Certain's jewelry box in the bathroom had been moved and opened, and the door of the bedroom closet was open and the clothes were "all pushed together" and "not normal." Robinett testified the couple "always made a point to lock the doors behind us" because "I've been broken into before."

Prock testified that he was not "there to clean out anything." Prock testified he was "looking to rent a place in Marysville." Prock said he had met a man named "Steve" at a bar earlier that day and Steve told him the house was "abandoned and that it needed to be cleaned up." Prock said he had previously driven by the house and wondered if it was abandoned. According to Prock, he "went to go check out this place" to see if the property was available to rent.

Prock testified that he arrived at the house about 4:45 p.m. and after looking into the windows, "it did look like . . . the place was abandoned." Prock said he tried to determine who owned the property by looking up tax information on the Snohomish County Assessor's website but he "wasn't really getting anywhere with that." Prock next talked to a neighbor who told him that she did not think anyone lived in the home. Prock testified he found a past-due cable bill addressed to "Casey Robinett" in a recycling bin in front of the home. Prock said he performed a search on Facebook for individuals named Casey Robinett. Prock found a Facebook account owned by a young female

3

with that name living in Florida. Because this was the only profile on Facebook for an individual named Casey Robinett, Prock concluded the house was abandoned.

Prock stated that when he walked to the back of the house, the back door was "standing open." Prock said he walked into the house and saw a dog in a cage. Because there was no food or water in the dog's dish, Prock concluded the dog must have been "left behind." Prock said he called his girlfriend and told her to contact animal control. Prock said that as soon as he walked into the bedroom, he heard someone say, "Hey, who's here?" Prock testified he "proceeded to walk out" of the house because he "didn't want to cause any trouble and wasn't there to, you know, cause any trouble." Prock testified he did not touch or move anything in the house and he did not take anything from the house. Prock said he did not enter the house "with the intention of taking anything from the house."

Prock admitted seeing "the police cars coming" with lights and sirens activated but said he "didn't think that it had anything to do with what had just occurred." Prock testified he made the right-hand turn because he "decided to go to my sister's" to "see what's up there" and he did not see Officer Smith turn around to follow him.

At the end of the trial, the court instructed the jury on the charged crime of residential burglary as well as the lesser included offense of criminal trespass in the first degree.

During closing argument, the prosecutor argued the jury's decision on the charge of residential burglary would likely turn on whether the jury found that Prock entered or remained in the home "with the intent to commit a theft therein." The prosecutor argued the "evidence shows quite clearly that the Defendant did enter into that property with the

intent to take the property therein." The prosecutor argued Prock's "story that he was looking for a place to rent" was not credible.

> Again, this is where we come into the credibility determinations and looking closely at the evidence. Mr. Prock has offered a story that he was looking for a place to rent. He had sort of seen this place before and it stood out in his mind and that he ran into someone named Steve who said, yeah, that place, no one's there right now. As a matter of fact, the back door is open. No evidence that Steve was the owner or otherwise authorized him to go in there. But this place that he was looking at, he just runs into a guy in a bar and low and behold that back door is open. You know, and what a coincidence that the back door would be open on this day when we have the testimony from Monica and Casey as to how they make very certain that their back door is locked and was so on this day.

The prosecutor told the jury that "credibility determinations are yours" and that the jury would need to decide whether Prock's story "holds water."

> The credibility determinations are yours. You will have to determine whether or not that holds water, this unknown Steve he just happened to meet in a bar and, oh, the back door was open.

The defense argued the only element of residential burglary in dispute was whether Prock intended to commit a theft in the home. The defense conceded Prock's testimony established he "knowingly entered and remained in that building" and "he knew that the entry or remaining was unlawful." Consequently, the defense told the jury Prock "should be found guilty of criminal trespass, but not of residential burglary," because Prock's testimony and the evidence showed Prock did not intend to commit a theft in the house.

> So, all of this shows that yes, he should be found guilty of criminal trespass, but not of residential burglary, because residential burglary requires the intention to commit a crime therein and the evidence doesn't support that. Ken's story doesn't support that and none of the evidence that you've heard supports that.

The defense argued several times that Prock's testimony showed he did not intend to commit a theft in the house. Specifically, the defense argued the "steps Ken took to verifying that [the house was abandoned] before he even entered the house . . . clearly establishes that there was no intent."

> He tried to find property records online to find out who the owner of the house was, he spoke to the neighbor and asked if anyone was living there, he looked in the garbage and then tried to find a Casey Robinett on Facebook. All of this supports the fact that he was just looking for a place to rent. He wasn't looking with the intention of committing a crime inside. He wasn't looking to take anything. He was just looking and doing his due diligence to try and find the owner of the house because he wanted to rent it.

In rebuttal, the prosecutor asked the jury, "Is what the Defendant offered you reasonable?" The prosecutor then told the jury, "If that is not reasonable to you, if, based upon on your life experiences, that is not reasonable, find him guilty. That's not a request. That's your obligation under the law. Find him not guilty if that's reasonable."

> Is what the Defendant offered you reasonable? Is it? Is it reasonable based on your common experiences, based upon what you know of how people act, how they interact, the way the world works, walking into bars by happenstance, people named Steve, just happened to change your mind at the last second, take this other route. If that is not reasonable to you, if, based upon on your life experiences, that is not reasonable, find him guilty. That's not a request. That's your obligation under the law. Find him not guilty if that's reasonable.

Prock did not object.

The jury convicted Prock of residential burglary and the court imposed a 13-month standard range sentence.

## ANALYSIS

Prock contends prosecutorial misconduct during closing argument denied him of the right to a fair trial. Prock argues the prosecutor improperly shifted the burden of

6

proof by arguing the jury must convict Prock if it found his testimony was not reasonable.

To prevail on a claim of prosecutorial misconduct, a defendant must show the prosecutor's argument was both improper and prejudicial. State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). An abuse of discretion standard applies to allegations of prosecutorial misconduct. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). A prosecuting attorney "commits misconduct by misstating the law." State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Prosecutorial misconduct is prejudicial where there is a substantial likelihood the improper conduct affected the jury's verdict. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). In analyzing prejudice, "we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." State v. Emery, 174 Wn.2d 741, 764 n.14, 278 P.3d 653 (2012). If a defendant does not object at trial, the defendant is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. Emery, 174 Wn.2d at 760-61.

During rebuttal argument, the prosecutor "is entitled to make a fair response to the arguments of defense counsel." State v. Gauthier, 189 Wn. App. 30, 37, 354 P.3d 900 (2015); State v. Gregory, 158 Wn.2d 759, 842, 147 P.3d 1201 (2006); State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). Even where the comments are improper, the remarks by the prosecutor are not grounds for reversal " 'if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a

curative instruction would be ineffective.' " State v. Weber, 159 Wn.2d 252, 276-77, 149 P.3d 646 (2006) (quoting Russell, 125 Wn.2d at 86); Gauthier, 189 Wn. App. at 38.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). "Shifting the burden of proof to the defendant is improper argument." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 713, 286 P.3d 673 (2012). "Misstating the basis on which a jury can acquit insidiously shifts the requirement that the State prove the defendant's guilt beyond a reasonable doubt." Glasmann, 175 Wn.2d at 713; State v. Vassar, 188 Wn. App. 251, 260, 352 P.3d 856 (2015).

Prock relies on Glasmann to argue the prosecutor shifted the burden of proof by misstating the basis on which the jury could acquit. In Glasmann, the prosecutor told jurors that in order to reach a verdict, they must determine, "Did the defendant tell the truth when he testified?" Glasmann, 175 Wn.2d at 701.[2] Our Supreme Court stated this argument "strongly insinuated that the jury could acquit (or find him guilty of lesser charges) only if it believed Glasmann." Glasmann, 175 Wn.2d at 713. Because "the proper standard is whether the evidence established that he was guilty of the State's charges beyond a reasonable doubt," the court concluded it "was clearly misconduct for the prosecutor to inform the jury that acquittal was appropriate only if the jury believed Glasmann." Glasmann, 175 Wn.2d at 713-14. Here, as in Glasmann, the prosecutor's remarks misstated the law and constituted misconduct.

However, because Prock cannot show there is a substantial likelihood the argument affected the jury's verdict, he cannot show the argument was prejudicial. The

___

[2] Internal quotation marks omitted.

State had a strong case. The defense conceded every element of residential burglary except the requirement that Prock entered the house with intent to commit a theft. The State introduced ample evidence at trial to support the intent element of the crime. Robinett testified that on May 8, Prock told him he was sent to "clear out the house." Similarly, Officer Smith testified Prock stated Steve told Prock "he could take what he wanted" from the house but he had not been able to take anything because "he didn't have time." Prock's own testimony established Steve told him the house "needed to be cleaned up." Further, the court's instructions to the jury correctly stated that to convict Prock of residential burglary, the jury must find each of the elements of the crime beyond a reasonable doubt; informed the jurors that the law was contained in the court's instructions; and directed the jury to disregard any statement by the lawyers that was not supported by law in the court's instructions. "We presume that juries follow all instructions given." State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001); State v. Condon, 182 Wn.2d 307, 333, 343 P.3d 357 (2015).

Moreover, nothing suggests the prosecutor's statement was so flagrant and ill intentioned that any prejudice could not have been obviated with a curative instruction. Warren, 165 Wn.2d at 28 (holding court's instruction cured prosecutor's argument undermining the State's burden of proof); see Glasmann, 175 Wn.2d at 713-14 (noting argument misstating basis on which a jury may acquit "in and of itself would probably not justify reversal"). Because Prock did not object to the prosecutor's argument at trial, he has waived his right to challenge it on appeal. Emery, 174 Wn.2d at 760-61.

In the alternative, Prock contends his attorney provided ineffective assistance of counsel by not objecting to the argument.

9

We review claims of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). "Courts strongly presume that counsel's representation was effective." Emery, 174 Wn.2d at 755. To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Emery, 174 Wn.2d at 755. "Deficient performance is performance falling 'below an objective standard of reasonableness based on consideration of all the circumstances.' " State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "Judicial review of an attorney's performance is highly deferential . . . and such performance is not deficient if it can be considered a legitimate trial tactic." State v. Humphries, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). "[T]he defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." McFarland, 127 Wn.2d at 336. "To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Even if Prock could establish the failure to object was deficient and not a strategic decision, he cannot show prejudice. Prock does not show that "but for counsel's performance, the result would have been different." McNeal, 145 Wn.2d at 362. Thus, we hold Prock's trial counsel was not ineffective for failing to object to the

prosecutor's misstatement of the basis on which the jury could convict Prock.

We affirm.

WE CONCUR: