IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>v.<br><br>JOHN BLAINE REED,<br><br>     Appellant. | No. 78678-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — John Blaine Reed appeals his convictions for aggravated first degree murder, second degree murder, and unlawful possession of a firearm. He claims that several trial court decisions about the admission of evidence denied him his constitutional right to present a defense. Reed also argues prosecutorial misconduct deprived him of a fair trial and that the cumulative error doctrine applies. We disagree and affirm.

FACTS

John Blaine Reed owned property on Whitman Road, which bordered the North Fork of the Stillaguamish River. He accessed this property by a gated easement road he shared with adjacent neighbors Patrick Shunn and Monique Patenaude. Reed and these neighbors argued about the use of the easement road and the gate.

Citations and pincites are based on the Westlaw online version of the cited material.

The March 22, 2014 Oso landslide damaged Reed's property.  FEMA provided Snohomish County with funds to purchase properties impacted by the Oso landslide.  On March 30, 2016, Snohomish County bought Reed's property for $97,000 and told Reed that he could not visit the property without a "right of entry" permit.

On April 4, 2016, Patenaude contacted Snohomish County to report Reed for squatting and trespassing on his former property.  When a Snohomish County Parks Department team went to Reed's former property to survey it, Patenaude told them that she was afraid of Reed remaining on the property.

On April 7, 2016, Reed and his brother Tony Reed went to the house of his former neighbors, Shelly and David Dick.[1]  He complained that Shunn and Patenaude would not let him onto his former property to retrieve his belongings.

At 9:06 a.m. on April 11, 2016, Reed called and spoke to Shelly.  He asked Shelly if Shunn and Patenaude were home.  Reed told Shelly he wanted to retrieve some belongings from his former property but feared Shunn and Patenaude would report him.  Shunn had already left his house to go to work, but Patenaude was home.  When Reed called Shelly again at 9:47 a.m., she told him that Patenaude was gone.  Reed drove over and parked his truck at Shelly and David's house at 10:25 a.m.  He went from there to his former property.

Patenaude returned home at about 11:00 a.m.  Shunn returned home at 2:57 p.m.  Around 3 p.m., Shunn and Patenaude showed up while Reed was collecting his belongings.  They got in an argument.  Reed shot Patenaude three times and then

---

[1] For clarity, we refer to Shelly, David, and Tony by their first names.

2

shot Shunn once. Reed put Shunn's body in the back of Shunn's Land Rover and Patenaude's body in the backseat of her Jeep. He drove and parked the cars down the shared easement road closer to his former property. Then he drove away.

The next day, Reed enlisted Tony to help drive the victims' cars off a cliff and bury their bodies in the woods. When they reached the cars, Reed wrapped each body in plastic tarps to hide them from view of the easement gate's security camera as they drove out of the property. Then, Reed drove Shunn's Land Rover and Tony drove Patenaude's Jeep to a clearing. The brothers hid the cars so they would not be spotted. They dug a grave, carried the bodies to the grave, removed the tarps, and buried the bodies. Then the brothers walked back to the cars. Reed drove and Tony followed him to the edge of a cliff. Tony drove Patenaude's Jeep off the edge of the cliff and into the Rollins Creek ravine by putting the car in first gear and jumping out while it was moving. Reed tried to drive Shunn's Land Rover off the cliff, but it got stuck on a tree.

Using cell phone data and a helicopter, Snohomish County Search and Rescue members found Shunn and Patenaude's missing cars. Inside the cars, police observed blood pooling, smearing, and splatter. Police also obtained residential surveillance footage showing both Shunn and Patenaude's cars driving toward where they were found at 3:31 a.m. on April 12, 2016.

On April 14, 2016, Reed and Tony learned the police found the victims' cars. They decided to flee to Arizona. On April 18, they crossed the border to Mexico.

Shunn and Patenaude's bodies were discovered on May 23, 2016. Shunn had one gunshot wound below and behind his left ear that went through his brain stem.

Patenaude had gunshot wounds between the base of her neck and left shoulder, on the back of her skull, and on her right forearm. The medical examiner determined the right forearm wound was "not necessarily a defensive wound" but was consistent with one. The medical examiner could not determine the exact position Shunn and Patenaude were in when they were shot.

On July 21, 2016, Reed was arrested in Mexico and turned over to U.S. authorities.

A jury trial occurred from April 26, 2018 to May 30, 2018. The jury convicted Reed of first degree murder of Shunn, second degree murder of Patenaude, and second degree unlawful possession of a firearm. Reed appeals.

## STANDARD OF REVIEW

We use a two-step process to review a claim that an evidentiary ruling violated a defendant's "right to present a defense."[2] First, we review the challenged evidentiary ruling under an abuse of discretion standard. Then, if necessary, we review de novo whether the ruling violated a defendant's constitutional "right to present a defense."[3] We review claims of prosecutorial misconduct for abuse of discretion.[4] "A court abuses its discretion when its decision adopts a view that no reasonable person would take or that is based on untenable grounds or reasons."[5]

---

[2] State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019); State v. Jones, 168 Wn.2d 713, 719-21, 230 P.3d 576 (2010).
[3] Arndt, 194 Wn.2d at 797-98.
[4] State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010). State v. Schef, 192 Wn.2d 350, 393-95, 429 P.3d 776 (2018), State v. Thorgerson, 172 Wn.2d 438, 442-44, 448, 258 P.3d 43 (2011).
[5] State v. Boyle, 183 Wn. App. 1, 12-13, 335 P.3d 954 (2014).

ANALYSIS

I.    Evidentiary Rulings and the Right to Present a Defense

Reed argues the trial court's decision to strike David's testimony that the victims carried firearms and to admit certain testimony from Detective Bilyeu unfairly interfered with and deprived him of his right to present a defense.

Criminal defendants have a constitutional right to "a meaningful opportunity to present a complete defense."[6]  The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to present testimony in their defense.[7]  "A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence."[8]

   a.  Testimony of Neighbor David Dick

Reed argues the trial court abused its discretion in striking David's testimony that the victims carried firearms because he has a constitutional right to present a defense. He argues David's testimony is relevant to his defense.

On cross-examination, defense counsel asked David if he knew "Patrick and Monique to carry firearms around the Whitman Road area?"  David said "yes."  The State objected, arguing the question exceeded the scope of the direct testimony.  The trial court agreed and instructed the jury to disregard David's answer.

---

[6] State v. Donald, 178 Wn. App. 250, 263-64, 316 P.3d 1081 (2013) (citing Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

[7] U.S. CONST. amend. VI; CONST. art. I, § 22; State v. Duarte Vela, 200 Wn. App. 306, 317, 402 P.3d 281 (2017) (citing State v. Hudlow, 99 Wn.2d 1, 14, 659 P.2d 514 (1983)).

[8] Jones, 168 Wn.2d at 720.

On appeal, Reed acknowledges that nothing prevented him from calling David as his own witness and asking the same questions. So, the trial court's decision to strike David's testimony did not prevent or deprive Reed from presenting a defense because he could have presented the stricken evidence in this manner. Reed cites no case holding that the defendant has a constitutional right to present their case during the presentation of the State's case.

Reed also argues the trial court abused its discretion in striking David's testimony because the State "opened the door" to evidence of Shunn and Patenaude's firearm ownership and usage. Because the trial court did not prevent Reed from presenting a defense, we do not reach this argument.

Similarly, the State argues that any exclusion of evidence that Patenaude was armed on other occasions was harmless. Because the trial court's evidentiary ruling did not deprive Reed of his right to present a defense, we need not reach this claim.

b. Testimony of Detective David Bilyeu

Reed argues the trial court should not have admitted Snohomish County Sheriff Detective Bilyeu's testimony, that "violence had been visited upon" Shunn and Patenaude in their cars, because it was not the proper foundation and it was speculative.

Bilyeu visited the scene of the victims' cars in the ravine and collected evidence from Patenaude's Jeep. He testified, "We knew their vehicles had blood in them, so we knew something had occurred, but we didn't know yet whether it was firearm related." The questioning continued:

6

Q. And I guess that leads to my next question is that it was clear, based upon what had been discovered at the car-recovery site that some violence had been visited on both Monique and Patrick; correct?

MR. SAYLES: I'm going to object. It calls for speculation.

THE COURT: At this point, I'll sustain it. You have to lay more of a foundation probably through a different witness.

Q. (By Mr. Matheson) Well, okay. Detective Bilyeu, when you hiked down to the bottom of the ravine at Rollins Creek and you looked inside the Jeep, were you able to visualize what appeared to be bloodstains inside that vehicle?

A. There was blood spatter all over every section of the interior, yes.

Q. Okay. And as an experienced homicide detective, would that lead you to the conclusion that violence had been visited upon somebody inside that car?

A. There was no question.

MR. SAYLES: Objection. Calls for speculation.

THE COURT: Overruled.

A. There was no question that was absolutely the case.

Q. (By Mr. Matheson) When the Land Rover was pulled by the tow truck onto that clear-cut, did you have an opportunity to visually look inside the rear cargo area?

A. I did.

Q. And did you see what appeared to be a fairly voluminous bloodstain in the cargo area?

A. Yes. It wasn't as much as the Jeep, but yes, there was a significant amount of blood in the Land Rover.

Q. And based upon your experience as a homicide detective, did it appear clear to you that violence had been inflicted upon somebody, in relationship to that cargo area?

A. Yes.

First, Reed asserts Bilyeu testified that, based on the blood evidence, Shunn and Patenaude were killed in their cars. Reed misconstrues Bilyeu's statements. Bilyeu testified that "violence had been visited" or "inflicted" upon somebody in the cars. He did not testify that Shunn or Patenaude were killed in their cars.

Second, Reed argues Bilyeu's testimony was inadmissible because it was foundationless, speculative, improper expert testimony, and improper lay opinion testimony. We "may refuse to review any claim of error which was not raised in the trial

court."[9]  "When the trial court overrules a specific objection and admits evidence, 'we will not reverse on the basis that the evidence should have been excluded under a different rule which could have been, but was not, argued at trial.'"[10]  Here, defense counsel objected on the basis of speculation only.  Reed raises the issues of foundation, expert testimony, and lay opinion testimony for the first time on appeal.  So, we do not review them.

Third, Reed's appeal brief does not address why the testimony was speculative. "This court will not consider claims insufficiently argued by the parties."[11]  Because Reed does not present a sufficient argument, we do not consider whether the testimony was speculative.

So, Reed's claim that the trial court should not have admitted Bilyeu's testimony fails.

c. Prejudice

Reed also argues the trial court's evidentiary rulings unfairly prejudiced him.  We disagree.  The exclusion of David's testimony did not unfairly prejudice Reed because he could have called David as a witness and presented the stricken testimony.  So, this ruling did not deprive him of the opportunity to present his defense.  Bilyeu's testimony was not prejudicial because there was ample evidence that Reed killed Shunn and Patenaude, including Reed's own admission.

---

[9] RAP 2.5(a).

[10] State v. Korum, 157 Wn.2d 614, 648, 141 P.3d 13 (quoting State v. Ferguson, 100 Wn.2d 131, 138, 667 P.2d 68 (1983)).

[11] State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

II.    Prosecutorial Misconduct

Reed argues that certain prosecutorial misconduct warrants reversal of the judgment and sentence. The State concedes the State improperly alluded to matters outside the record at trial. But, it argues that the error was harmless and does not require reversal.

Bruce Cheek also lived on Whitman Road. Cheek testified that after the 2014 Oso landslide, Cheek and Reed met cutting firewood on the side of a road in their neighborhood. Reed invited Cheek to his property and showed him the damage caused by the landslide. Cheek testified that Reed "lost most of his property…And [the landslide] had really devastated his access, his driveway coming in." Reed was agitated and said he was going to repair his land and "he didn't care who tried to stop him." Cheek also testified that Reed said he knew his way around the land and "he could hide someone up there, and they would never be found."

On cross-examination Reed denied making these statements to Cheek and claimed that Cheek had been fired for lying. The prosecutor told Reed his testimony was incorrect.

> Q. Do you remember the portion of the discussion where you were telling him that you can make people disappear up on the bench?
> A. I never told him that. I think about how many times you meet a person, the first half hour they're telling you they're going to kill people and bury them. That doesn't happen.
> Q. Okay. But again, that's kind of an ongoing theme here today, isn't it, with people that have recounted conversations –
> A. Mr. Cheek's lost his job from lying under oath.
> Q. That is not correct.
> A. That's what he told me, and his son confirmed it.

9

During the State's closing argument, the prosecutor said, "And [Reed's] story is, 'Oh, he's a liar. He got fired for lying.' Well, I would suggest to you if that had been true, the defense would have…put evidence of that forward." The prosecutor also said, "And Bruce Cheek told law enforcement all about it before they even found the bodies exactly where John Reed told Bruce [Cheek] they would be found. So [Reed's] been thinking about that aspect of the plan since 2014." Defense counsel did not object.

We review claims of prosecutorial misconduct for abuse of discretion.[12] A prosecutor's misconduct may deny the appellant their constitutional right to a fair trial.[13] To prevail on a claim of prosecutorial misconduct, the appellant must show the comments were improper and prejudicial.[14] To show prejudice, the appellant must demonstrate a substantial likelihood that the prosecutor's misconduct affected the outcome of the trial.[15] "The issue is whether the comments deliberately appealed to the jury's passion and prejudice and encouraged the jury to base the verdict on the improper argument rather than properly admitted evidence."[16] If the misconduct cannot be remedied, and is material to the outcome of the trial, the appellant is denied their right to a fair trial.[17]

---

[12] Ish, 170 Wn.2d at 196.
[13] In re Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).
[14] Ish, 170 Wn.2d at 195 (citing State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008)).
[15] In re Glasmann, 175 Wn.2d at 704.
[16] In re Glasmann, 175 Wn.2d at 711.
[17] State v. Vassar, 188 Wn. App. 251, 256, 352 P.3d 856 (2015).

We evaluate the propriety of the prosecutor's conduct and whether any improper conduct prejudiced the appellant by reviewing the challenged statements in the context of the entire case.[18]

It is misconduct for a prosecutor to express their "personal belief as to the veracity of the witness" or the "credibility of a witness."[19] "Whether a witness has testified truthfully is entirely for the jury to determine."[20] But, "a prosecutor is allowed to comment on a defendant's failure to support her own factual theories."[21]

The State argues that because defense counsel did not object at trial, the prosecutorial misconduct claim is not properly before this court. We disagree. When an appellant fails to object at trial to the challenged conduct, and raises a misconduct issue for the first time on appeal, they must show the "misconduct was so flagrant and ill intentioned" that a jury instruction could not have cured any resulting prejudice.[22] We consider whether the appellant "received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection."[23] We review Reed's claim to determine if the prosecutor's statements were flagrant and ill intentioned misconduct and if the trial court could have cured any prejudice with a jury instruction after a timely objection.

---

[18] Thorgerson, 172 Wn.2d at 442-43.
[19] Ish, 170 Wn.2d at 196.
[20] Ish, 170 Wn.2d at 196.
[21] Vassar, 188 Wn. App. at 260.
[22] In re Glasmann, 175 Wn.2d at 704 (citing Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994))).
[23] State v. Walker, 182 Wn.2d 463, 478, 341 P.3d 976 (2015) (citing State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012)).

The prosecutor's statements were prejudicial because they were opinions about Cheek and Reed's credibility. Whether Cheek or Reed testified truthfully was for the jury to determine. The prosecutor could have called into question Reed's credibility and truthfulness through questioning rather than stating, "That is not correct."

Reed argues the court's jury instructions did not cure the prejudice caused by the prosecutor's misconduct. The State argues the statement was not evidence and could not be considered by the jury. The State points to a jury instruction that provides,

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

While this jury instruction states, "the lawyers' statements are not evidence," no instruction told the jury to disregard the prosecutor's specific statements. So, the cited jury instruction does not cure the prejudice.

Reed also contends that no instruction could have cured the prejudice caused by the prosecutor vouching for Cheek's credibility. We disagree. Courts frequently instruct jurors to disregard or limit their use of much more prejudicial evidence. For example, when courts admit evidence of a defendant's prior criminal history, jurors' are instructed on the limited purpose for which they are to consider that evidence. Here, an appropriate instruction would have cured any prejudice. Also, because Reed admitted to killing Shunn and Patenaude and hiding their bodies, we are persuaded that the

12

prosecutor's prejudicial statements were harmless beyond a reasonable doubt and do not require reversal.[24]

III.   Cumulative Error Doctrine

Reed argues the cumulative error doctrine applies.   He seeks reversal and remand for a new trial.   We disagree and find that it does not.

The cumulative error doctrine applies when a combination of trial errors denies the accused a fair trial though one of the errors alone would not warrant reversal.[25] Even when we decide that each error standing alone would otherwise be harmless, cumulative error may warrant reversal of a trial court decision.[26]   But, if the errors are few and do not affect the trial's outcome, we will not find cumulative error.[27]

Here, each of the errors Reed raises were harmless and did not affect the trial's outcome.   Reed admitted to killing Shunn and Patenaude.   He claimed that he acted in self-defense.   Reed acknowledges that nothing prevented him from calling David as his own witness.   Even without Bilyeu's testimony, overwhelming evidence shows that Reed killed Shunn and Patenaude and stored their bodies in their respective cars.   And, while the prosecutor's statements about Cheek were improper and prejudicial, in light of the other evidence, the statements were harmless.   So, the cumulative error doctrine does not apply.

---

[24] The State also argues that Reed's statement was inadmissible under ER 608(b).  Because the State's prejudicial statements were harmless, we do not reach this claim.

[25] Emery, 174 Wn.2d at 766.

[26] Weber, 159 Wn.2d at 279.

[27] Weber, 159 Wn.2d at 279.

CONCLUSION

We affirm.  The trial court's evidentiary rulings did not deprive Reed of his right to present a defense and did not prejudice him.  The prosecutor's misconduct during its cross-examination of Reed, and its prejudicial statements during closing argument, could have been cured by a jury instruction.  They were also harmless and do not require reversal because Reed admitted to killing Shunn and Patenaude and hiding their bodies.  And, the cumulative error doctrine does not apply.

_____
Leach, J.

WE CONCUR:

_____          _____
Brennan, J                                          Appelwick, J.