# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53979-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JORGE EDMUNDO GARCIA PENA, | |
| Appellant. | |

MAXA, J. – Jorge Garcia Pena appeals his convictions of four counts of first degree child rape. The convictions arose from allegations of sexual abuse by the 10-year-old daughter of Garcia Pena's partner.

We hold that (1) Garcia Pena is precluded from arguing that the admission of expert testimony regarding grooming was improper because he objected to the testimony on different grounds at trial; (2) the prosecutor did not engage in misconduct by arguing that the victim made consistent reports of sexual abuse because the argument was based on the victim's testimony; (3) the prosecutor did engage in misconduct by implying that there were out-of-court statements that would have corroborated ET's testimony, but Garcia Pena waived his argument by not objecting at trial and also cannot show prejudice; and (4) Garcia Pena's claim of ineffective assistance of counsel based on the failure to object to the prosecutor's improper comment fails because there was no prejudice. Accordingly, we affirm Garcia Pena's convictions.

FACTS

*Background*

Maria Torres Guerrero lived with Garcia Pena, her two daughters from a prior relationship, Garcia Pena's daughter, and a son that she had with Garcia Pena. One of Guerrero's daughters was ET.

When ET was 10 years old and in the fifth grade, she told two friends at school that Garcia Pena was touching her. Her friends encouraged her to tell someone and one went with her when ET told a volunteer teacher, Catrina Celestine, that Garcia Pena was touching her. Celestine informed the vice-principal of the elementary school about the disclosure, and ET told the vice-principal that Garcia Pena was touching her at home. The vice-principal called the police and an officer reported to the elementary school.

Jennifer Schooler, a professionally trained forensic interviewer, interviewed ET about her allegations and recorded the interview while Officer Keith Miller observed the interview from a different room.

The State charged Garcia Pena with four counts of first degree child rape.

*Jury Trial*

ET testified that Garcia Pena started touching her when she was seven years old. She described how Garcia Pena raped her, the frequency of the incidents, and the homes in which the sexual abuse occurred. She also stated that Garcia Pena showed her pornographic videos on his phone.

ET testified that she told her two friends, Celestine, the vice-principal, and Schooler that Garcia Pena was touching her at home. ET also stated that she told the police that Garcia Pena was touching her on her private areas.

Celestine testified that when ET approached her, she was with a school friend. Celestine stated that she was present when ET told the vice-principal what she had told Celestine. Celestine generally described ET's demeanor during the disclosure.

Officer Miller testified that he investigated ET's allegations. He also observed Schooler's forensic interview from another room, during which ET made several disclosures. During the interview, ET explained what she had told her two friends, and Miller talked to the two friends and confirmed what ET had said in the interview.

In the middle of the trial, the prosecutor informed Garcia Pena that the State planned to call Schooler to testify about grooming. Garcia Pena objected to Schooler's proposed testimony about grooming on the grounds that the State had failed to provide sufficient notice about the grooming testimony. He argued that he possibly would have hired his own expert on grooming to rebut her testimony. Garcia Pena did not argue that the grooming testimony was inadmissible. The trial court allowed Schooler to testify about grooming and informed Garcia Pena that it would consider giving him time to locate an expert.

In her testimony, Schooler explained the purpose and procedures of a forensic interview. Schooler testified that she conducted a child forensic interview with ET, but did not discuss the substance of the interview. Schooler then testified about the grooming process as a way for a person who wants to sexually abuse a child to manipulate the child. She stated that grooming may include showing pornography to the child.

*Closing Arguments*

During closing argument, the prosecutor emphasized that ET had told her story to two friends, Celestine, the vice-principal, Schooler, and defense counsel during a defense interview. He stated that ET's story was consistent. Garcia Pena did not object.

Garcia Pena argued during closing argument that the State's charges were based solely on ET's uncorroborated testimony and that her testimony lacked reliability and specificity amd include discrepancies, and therefore was not credible.

On rebuttal, the prosecutor stated the following:

> The rules of evidence . . . do not allow attorneys to bring in statements that are consistent, so you're going to think why didn't I get to watch the [forensic interview video]; . . . why didn't I hear from [ET's two friends]. Because those statements are all consistent.

4 Report of Proceedings (RP) at 349. The prosecutor continued:

> What you heard and the testimony you heard is that [ET] consistently disclosed to the friends.
> . . . .
>
> The friends you heard from, the volunteer at the school. There was the disclosure there, consistent disclosure, otherwise we would have impeached about what was different.
>
> That volunteer also heard her tell the principal, another consistent disclosure. She did the forensic interview. Another consistent disclosure about what occurred. She did the defense interview. Yet another time. Her story is the only thing that's been consistent.

4 RP at 349-50. Garcia Pena did not object to any of these statements.

The jury convicted Garcia Pena of four counts of first degree child rape. Garcia Pena appeals his convictions.

## ANALYSIS

A. GROOMING TESTIMONY

Garcia Pena argues that the trial court erred when it admitted Schooler's testimony regarding grooming because it was inadmissible profile testimony. We decline to reach the merits of Garcia Pena's argument because the basis of his objection to the testimony in the trial court is different from the argument he raises on appeal.

At trial, Garcia Pena did not object to Schooler's grooming testimony on the grounds that the substance of the testimony was improper. His only objection was that the State failed to provide sufficient notice that it would be introducing expert testimony on the topic of grooming and that he was not given the opportunity to hire his own expert on grooming. But on appeal, he argues that the grooming testimony itself was inadmissible profile testimony that implied guilt based on characteristics of known offenders.

A defendant cannot object to evidence on one ground at trial and argue a different ground for excluding the evidence on appeal. *See State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "A party may assign evidentiary error on appeal only on a specific ground made at trial." *Id.* The purpose of this rule is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors and avoid unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

Garcia Pena argues that his objection that he received insufficient notice of Schooler's testimony impliedly indicated that the testimony was improperly prejudicial. We disagree. At no point did Garcia Pena suggest that he was objecting because the proposed grooming testimony was inadmissible.

Accordingly, we decline to consider Garcia Pena's argument regarding Schooler's grooming testimony.

B.      PROSECUTORIAL MISCONDUCT

Garcia Pena argues that the prosecutor committed misconduct when he improperly vouched for ET's credibility and stated during closing argument that ET's testimony was consistent with other witnesses. We hold that Garcia Pena's prosecutorial misconduct claims fail.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). "To show prejudice requires that the defendant show a substantial likelihood that the misconduct affected the jury verdict." *Id.* We must consider the prosecutor's conduct in the context of the record and all the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

Prosecutors may not vouch for a witness's credibility. *State v. Molina*, 16 Wn. App. 2d 908, 920, 485 P.3d 963, *review denied,* 198 Wn.2d 1008 (2021). However, prosecutors are given " 'wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury.' " *State v. Vassar*, 188 Wn. App. 251, 257, 352 P.3d 856 (2015) (quoting *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005)). Therefore, closing argument is not considered improper vouching unless it is clear that the prosecutor is expressing a personal opinion about credibility rather than arguing an inference from the evidence. *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010).

We review a prosecutor's statements during closing argument in the context of the total argument, the issues raised in the case, the evidence addressed in the argument, and the jury instructions. *Vassar*, 188 Wn. App. at 256-57.

A defendant's failure to object at trial constitutes a waiver of any claims of prosecutorial misconduct unless the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) a curative instruction would not have eliminated any

prejudicial effect and (2) the misconduct had a substantial likelihood of affecting the verdict. *Id.* at 761.

Garcia Pena acknowledges that he failed to object at trial to the statements he now challenges. However, he argues that the prosecutor's repeated references to the consistency of ET's story constituted improper vouching that rose to the level of flagrant misconduct requiring reversal.

2.    Argument Regarding ET's Consistent Disclosures

Garcia Pena claims that the prosecutor's argument that ET's testimony was consistent with the statements she made to various people was improper because those people did not testify about the substance of what ET told them.

Garcia Pena is correct that ET's two friends did not testify and that Celestine, the vice-principal, the police officers, and Schooler did not state specifically what ET told them about Garcia Pena's abuse. But the prosecutor was not referring to evidence outside the record because *ET* testified about what she told these people. The prosecutor stated, "What you heard and the testimony you heard is that [ET] consistently disclosed to the friends." 4 RP at 349.

ET testified that she told her friends that Garcia Pena was touching her. She testified that she told Celestine that Garcia Pena was touching her at home. She testified that she told the vice-principal that Garcia Pena was touching her at home. She testified that she told the police that Garcia Pena was touching her on her private parts. She testified that she told Schooler about all the places that Garcia Pena was touching her, including that he vaginally raped her.

The prosecutor's statements that ET had made consistent disclosures to various people was based on evidence presented at trial – ET's testimony about those disclosures. Therefore, the prosecutor was well within the wide latitude he had to argue based on the evidence.

7

3. Argument that the Statements of Other Witnesses were Consistent

Garcia Pena challenges the prosecutor's rebuttal argument that ET's two friends did not testify and that the forensic interview video was not shown to the jury "[b]ecause those statements are all consistent." 4 RP at 349. We agree that this statement was improper. The prosecutor implied that there were out-of-court statements that would have corroborated ET's testimony. But these out-of-court statements were not in the record. It is improper for the prosecutor to refer to evidence that is outside the record. *State v. Teas*, 10 Wn. App. 2d 111, 126, 447 P.3d 606 (2019).

However, this statement was not "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Therefore, Garcia Pena waived his argument by not objecting.

In addition, there was no prejudice. As noted above, ET testified about what she disclosed to her friends and in the forensic interview. Officer Miller testified that he observed Schooler's forensic interview from another room and heard what ET said she told her friends. Miller talked to the two friends and confirmed what ET had said in the interview. Therefore, regardless of the prosecutor's argument, the jury already had heard extensive evidence that ET made consistent disclosures. Garcia Pena cannot show that there was a substantial likelihood that the prosecutor's statement affected the jury's verdict.

Accordingly, we hold that Garcia Pena's prosecutorial misconduct claims fail.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Garcia Pena argues that he received ineffective assistance of counsel because defense counsel failed to object to the prosecutor's statements during closing arguments. We disagree.

To prevail on an ineffective assistance of counsel claim, a defendant must show not only that defense counsel's performance was deficient, but that the deficient performance prejudiced the defendant. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017). Prejudice exists if there is a reasonable probability that, except for defense counsel's error, the result of the proceeding would have been different. *Id.* at 458.

But as stated above, the prosecutor's argument regarding ET's consistent disclosures was not improper and the argument regarding other consistent statements was not prejudicial. Therefore, Garcia Pena's ineffective assistance of counsel argument fails.

CONCLUSION

We affirm Garcia Pena's first degree child rape convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

NEVIN, J.P.T.*

* Judge Jack Nevin is serving as a judge pro tempore of the court pursuant to RCW 2.06.150(1).