# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52947-5-II |
| Respondent, | |
| v. | |
| TOMMY LEE COOK SR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Tommy Cook Sr. appeals his conviction for possession of a controlled substance with intent to deliver and a related school bus stop enhancement. He argues that the court abused its discretion when it granted a continuance beyond his speedy trial period where the prosecutor failed to establish due diligence in obtaining a witness's presence at trial. He also argues that the court erred in allowing a detective to testify as an expert witness under ER 702 on "illegal drug culture." Cook further asserts that improper statements during closing argument constituted prosecutorial misconduct and cumulative error deprived him of his constitutional right to a fair trial.

We disagree and hold that the court did not abuse its discretion in granting a continuance or in allowing the detective's expert testimony. We also hold that Cook's right to a fair trial was not violated by prosecutorial misconduct or cumulative error and affirm.

FACTS

Cook resided in a home in Forks, Washington, and his son Tommy Cook Jr. (Tommy Jr.)[1] lived in an RV parked in the yard. Cleopatra Matthews, Tommy Jr.'s girlfriend, frequently stayed with him in the RV. Police executed a search warrant on Tommy Jr.'s RV as a result of an investigation into his drug dealing activity. While some of the officers executed the search warrant on the RV, other officers escorted Cook out of his home in order to secure the scene. The officers asked Cook to voluntarily allow the police into the house to assure there were no other people or weapons there and Cook refused.

Based on the results of the search of the RV and conversations with Tommy Jr. and Matthews, the police obtained a telephonic warrant to search Cook's house that same day. The police conducted a search. On a coffee table in the living room, police found two digital scales, spoons, tinfoil with heroin residue, and a small container containing heroin. In a hallway closet, police found a container with several bags of heroin totaling 62.4 grams, and a zippered bank bag with over $2000 cash.

While police searched Cook's house, he stood outside, talking to Detective Pickrell. After Pickrell advised him of his *Miranda*[2] rights, Cook told Pickrell that he used to sell heroin "on a larger scale [but] he didn't sell as much anymore" and that he provided the heroin his son was selling. 2 Verbatim Report of Proceedings (VRP) at 256. Cook also told Pickrell that he recently

---

[1] Because the appellant and his son have the same name, we refer to the appellant's son as Tommy Jr. No disrespect is intended.

[2] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

switched suppliers but was unhappy with the quality of the heroin. He also admitted that he purchased 14 grams of heroin the previous week.

On July 3, 2018, the State charged Cook with possession with intent to distribute a controlled substance within 1000 feet of a school bus stop. Cook posted bail prior to arraignment and was out of custody while awaiting trial. The court scheduled trial for October 22, three days before the expiration of the 90-day speedy trial period under CrR 3.3.

On October 18, the court conducted a CrR 3.5 hearing regarding the admissibility of Cook's statements to Pickrell and determined that for purposes of CrR 3.5, those statements were admissible. The same day, the State requested a continuance of the trial due to the fact that it was unable to serve Matthews with a subpoena.

The prosecutor informed the court that it issued a subpoena on October 2, but it received a return of service from the Sherriff's office on October 11. The return of service stated that the Sheriff had been "[u]nable to effect personal service. Party to be served may now be living outside of Clallam County." 1 VRP at 75. The State did not know what date between the 2nd and the 11th that the Sherriff attempted to serve the subpoena. The State informed the court that it found out a few days before the October 18 hearing that Matthews had moved to Idaho.

Regarding Matthews' materiality as a witness, the prosecutor asserted that because defense counsel indicated her intent to seek exclusion of Cook's incriminating statements on relevancy grounds, Matthews' testimony would be material because she was the only other witness to Cook's alleged drug dealing who could be called to testify.[3]

---

[3] The prosecutor noted that Tommy Jr. could not be compelled to testify due to his Fifth Amendment privilege.

Defense counsel objected to the continuance, arguing that there had not been a sufficient showing that Matthews' testimony was material or that the State exercised due diligence in trying to subpoena her within a reasonable amount of time. Defense counsel also complained that the State did not inform her until two days before trial that Matthews could not be found. Defense counsel asserted that a failure to timely subpoena Matthews was not a valid reason for a continuance.

After extensive argument, the court found adequate cause to continue the trial. It reasoned that the State was unaware until a week prior that Matthews, who the State considered material, was in another state. Also, Cook was out of custody and it was the first trial setting, leading the court to conclude that Cook would suffer no prejudice from a continuance. Further, the court determined that allowing the State time to attempt to secure attendance of a material witness was in the interest of justice. Initially the court expressed a desire to set trial two weeks later but due to defense counsel's unavailability, the soonest available date was November 26, about one month after the original expiration of time for trial.

On the first day of trial, the State informed the court that it attempted to obtain an out of state subpoena for Matthews, however, because Matthews was in the final stages of pregnancy, her doctor recommended she not travel. The Idaho court, therefore, declined to issue an out of state subpoena because travel would impose an undue hardship on Matthews. The State did not seek an additional continuance.

The State called Detective Michael Grall, who was a member of the local drug task force for 19 years and who dealt specifically with investigations relating to narcotics. Grall testified that over the past 19 years he interviewed at least 500 people about aspects of "illicit drug culture." 2

4

VRP at 348. His areas of knowledge included types of drugs, method of use, structure of the supply chain, and the transportation, packaging, and selling of drugs.

The State asked the court to qualify Grall as an expert in the use and sale of controlled substances and "drug culture." *Id.* at 352. Cook objected, arguing first that Grall is a fact witness that did not qualify as an expert. He further argued that expert testimony about "illicit drug culture" was not necessary or relevant to the case. The State asserted that Grall's testimony would give the jury information that would assist them in determining the meaning or weight to give the evidence. The State gave an example of how the testimony could be relevant, asserting that during jury selection, the defense appeared to "strongly suggest[]" that a drug dealer will never be a user, and Grall's testimony would address that. *Id.* at 350.

The court allowed Grall to testify, determining that Grall had "specialized knowledge associated with the world of the drug culture that might assist the trier of the facts," and that he would testify about the use and sale of heroin that was directly applicable to the case. *Id.* at 354.

Grall testified about the paraphernalia, like foil, syringes, and spoons found in Tommy Jr.'s RV, and then explained the purpose of those items. He explained that heroin and other controlled substances could be heated on tin foil and inhaled or could be turned into a liquid and injected intravenously. Grall then testified about his role in executing the search warrant on Cook's home and identified the evidence collected from it.

Cook testified and admitted that he was a heroin addict and that the heroin found on the coffee table was for his personal use. He testified that he did not use the hallway closet and did not recognize the container holding heroin found there. He admitted discussing his personal drug use with Pickrell, but denied telling Pickrell that he didn't sell as much heroin as he used to or that he

supplied heroin to Tommy Jr. to sell. He also stated that he used a scale to measure out his own dosage, and to confirm that the quantity of heroin he purchased was what he paid for.

The State recalled Grall in rebuttal and asked if it was common for a drug user to weigh out doses before consuming controlled substances. Cook objected, arguing that the testimony would be an improper comment on the evidence and an opinion on the credibility of the witness. The court overruled the objection, and Grall answered that he had not interviewed any user who told him that they used scales to weigh a personal dosage, and in his experience, digital scales are used to weigh quantities of controlled substances for distribution.

During closing argument, the prosecutor argued that Cook corroborated all parts of Pickrell's testimony except the statements that he used to sell more heroin than he does now and that he provides heroin for Tommy Jr. to sell. Regarding those two statements, she continued:

> So, who is more believable? That's what this comes down to. It's really simple, who's the most believable, is it Detective Pickrell or is it Mr. Cook Senior? Because basically the meaning of the defense case that Detective Pickrell was making up those two statements, he either hallucinated it because he's crazy or he made it up and that's what you need to decide when you go into the jury room, because if you believe Detective Pickrell and find him credible, the defendant is guilty. So, whose the most believable, whose the most credible?

3 VRP at 486.

The jury found Cook guilty of possession with intent to deliver and that he did so within 1000 feet of a school bus stop. Cook appeals.

## DISCUSSION

### I. CONTINUANCE

Cook argues that the court abused its discretion in finding good cause for a continuance because the State failed to exercise due diligence in obtaining Matthews' attendance. He argues

that the State did not exercise due diligence because it did not subpoena Matthews until October, and so did not discover that she was out of state until it was too late for her to appear at trial.

The State argues that the court did not abuse its discretion in granting the continuance because the State attempted to subpoena Matthews in a timely manner, and when she could not be located, it continued its good faith effort to find and serve her. Additionally, the State contends that due diligence is not the applicable standard under CrR 3.3(f)(2). We conclude that the trial court did not abuse its discretion in granting the continuance.

a. Legal Principles and Standard of Review

Under CrR 3.3(b)(2), an individual that is out of custody pending trial must be tried within 90 days of arraignment. However, CrR 3.3(e) excludes certain time periods from the computation of the 90-day speedy trial period, including a valid continuance granted under CrR3.3(f)(2). CrR 3.3(f)(2) provides:

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. The motion must be made before the time for trial has expired. The court must state on the record or in writing the reasons for the continuance.

When a defendant is not brought to trial within the time for trial period set forth in CrR 3.3, the remedy is dismissal of the case with prejudice. CrR 3.3(h); *State v. Saunders*, 153 Wn. App. 209, 211, 220 P.3d 1238 (2009).

The decision to grant or deny a motion for a continuance is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822-23, 312 P.3d 1 (2013). We will not disturb a trial court's decision to grant or deny a motion for a continuance absent a clear showing that it is "'manifestly unreasonable, or exercised on

7

untenable grounds, or for untenable reasons.'" *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009) (internal quotation marks omitted) (quoting *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005)).

b. Analysis

*1. Due Diligence*

Cook argues that the trial court may not grant a continuance to the State for failure to secure a material witness for trial if the State does not demonstrate that it exercised due diligence, which includes the issuance of a subpoena to the witness. The State contends that due diligence is not the applicable standard, and we agree with the State. The 2003 amendments to CrR 3.3 eliminated the due diligence requirement. *See State v. George*, 160 Wn.2d 727, 738, 158 P.3d 1169 (2007) (recognizing that the courts should not read in a specific standard of due diligence when the plain language of the rule does not call for it).[4]

*2. Validity of Grounds for Continuing Trial*

CrR 3.3(f)(2), describes the circumstances under which a court may grant a continuance. It requires the court to find that a continuance is necessary for the administration of justice and will not prejudice the defendant in the presentation of the defense. CrR 3.3(f)(2).

The unavailability of a material witness is a basis for continuing a trial where there is a valid reason for the unavailability, the witness will become available within a reasonable time, and there is no substantial prejudice to the defendant. *State v. Jones*, 117 Wn. App. 721, 729, 72 P.3d

---

[4] Additionally, the "due diligence" standard was amended out of the relevant section of CrR 3.3 in 1979. Compare former CrR 3.3(e)(2)(ii) (1978) with former CrR 3.3(f)(2) (1979) with CrR 3.3(f)(2).

1110 (2003). We must determine whether the court abused its discretion in allowing a continuance based on these grounds.

Cook first argues that the State failed to establish that Matthews was a material witness. We disagree.

The burden of establishing materiality "has been described as establishing a colorable need for the person to be summoned." *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984). At the hearing on the motion to continue, the State argued that Matthews was a material witness because there was a possibility that Cook could object to Pickrell's testimony regarding Cook's admissions that he distributed heroin. The State did not know whether Cook's admissions to Pickrell would be admitted. Based on this concern, the State wanted Matthews to testify because it expected Matthews would tell the jury that Cook supplied his son with heroin to sell. The State established a "colorable need" for Matthews' testimony, therefore, the court did not err in concluding that she was a material witness.

Cook next argues that there was not a valid reason for Matthews' unavailability. Matthews' unavailability was due to the fact that she had moved to Idaho sometime between July and early October and, because the State issued the subpoena after she moved, it was unable to affect personal service. The State issued the subpoena on October 2nd, 23 days before trial, and it had no reason to believe that Matthews no longer lived at her last known address. The State received a return of service on October 11 and continued its efforts to locate Matthews. Once the State learned that Matthews was in Idaho a few days before the October 18 hearing, the only means by which it could secure Matthews' attendance at trial was by utilizing the process for serving an out of state subpoena. We conclude that there was a valid reason for Matthews' unavailability.

Additionally, when requesting the continuance, the State was required to show that Matthews would become available within a reasonable time. *Jones*, 117 Wn. App. at 729. The State assured the trial court that it would use the out-of-state subpoena process to obtain Matthews' presence at trial. The State ultimately did utilize this process, but Idaho declined to serve the subpoena based on its determination that Matthews, who was in the late stages of pregnancy, would be unduly burdened by the interstate travel. There is no indication from the record that the State knew at the time it requested the continuance that Matthews would be unable to travel due to pregnancy, nor is there is anything in the record to indicate that the State had any reason to believe that it could not obtain Matthews' attendance with an out of state subpoena. We conclude that the State showed that Matthews would become available within a reasonable time.

CrR 3.3(f)(2) requires the trial court to find the defendant will not be prejudiced in his defense prior to granting a continuance. Additionally, when a continuance is based on the unavailability of a witness, the continuance is valid if there is no substantial prejudice to the defendant. *Jones*, 117 Wn. App. at 729.

In opposing the continuance, Cook did not argue or otherwise demonstrate that a continuance would prejudice his defense. The court, after considering that Cook was not in custody while awaiting trial, determined that it could not see that any prejudice would come to Cook. On appeal, Cook does not argue that the continuance caused any prejudice and in any case the record would not support such an argument.

We conclude that the court did not abuse its discretion in granting a continuance due to an unavailable witness because the court properly determined that the continuance was required in the administration of justice and Cook would not be prejudiced in the presentation of his defense.

## II. EXPERT WITNESS

Cook argues that the court erred in allowing Detective Grall to testify as an expert witness under ER 702. He contends that the court abused its discretion because Grall's expertise in "drug culture" does not qualify him to testify under ER 702, and his testimony improperly invaded the province of the jury by opining about Cook's intent based on his ownership of scales. Br. of Appellant at 34.

The State argues that the court did not err in allowing Grall to testify. It asserts that Grall's practical experience is sufficient to qualify him as an expert witness. It also contends that Grall's testimony on rebuttal was properly admitted because it was helpful to the jury to determine intent, and it was based on Grall's training, rather than his personal opinion of guilt or innocence. We agree with the State.

a. Legal Principles

ER 702 provides that "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." "Practical experience is sufficient to qualify a witness as an expert" under ER 702. *State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992).

"When determining the admissibility of expert testimony . . . , ER 702 requires that we engage in a two-part inquiry: (1) does the witness qualify as an expert; and (2) would the witness's testimony be helpful to the trier of fact. *State v. Guilliot*, 106 Wn. App. 355, 363, 22 P.3d 1266 (2001). Evidence is helpful if it concerns matters beyond the common knowledge of a layperson and does not mislead the jury. *State v. Thomas*, 123 Wn. App. 771, 778, 98 P.3d 1258 (2004).

11

"'Courts generally interpret possible helpfulness to the trier of fact broadly and will favor admissibility in doubtful cases.'" *State v. Groth*, 163 Wn. App. 548, 564, 261 P.3d 183 (2011) (internal quotation marks omitted) (quoting *Moore v. Hagge*, 158 Wn. App. 137, 155, 241 P.3d 787 (2010)).

We review a trial court's admissibility determination under ER 702 for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 798, 453 P.3d 696 (2019).

It is unclear from Cook's brief whether he is arguing that Grall did not qualify as an expert because his testimony about "drug culture" is not the type of "specialized knowledge" contemplated by ER 702 or because his testimony was not helpful to the jury. In his assignments of error, he asserts that "The trial court erred by finding Detective Michael Grall was qualified as an expert in 'illegal drug culture' pursuant to ER 702 and then allowed [him] to opine on [Cook's] criminal intent." Br. of Appellant at 1.

Nevertheless, to determine whether the trial court abused its discretion, we must determine first whether Grall qualifies as an expert and then whether his testimony would be helpful to the trier of fact. *Guilliot*, 106 Wn. App. at 363.

b. Analysis

Grall testified that he had 19 years of experience as a member of the local drug task force dealing specifically with investigations related to narcotics. Grall testified that he interviewed at least 500 people in the last 19 years about aspects of illicit drug culture. His experience gave him in-depth knowledge about different types of drugs, their method of use, the structure of the drug supply chain, and all aspects of the transportation, packaging and selling of drugs. We conclude

that Grall has the requisite knowledge, experience, and training to qualify as an expert on illegal drug culture.

Grall testified about the uses for drug paraphernalia found in Tommy Jr.'s RV, that he has never been told by a drug user that they use digital scales to weigh out dosages of drugs for personal consumption, and that in his experience, digital scales are used to weigh drugs for distribution.

Grall's testimony about the paraphernalia, like foil, syringes and spoons found in Tommy Jr.'s RV was helpful to the jury because it is about a matter beyond the common knowledge of a lay person. Further, it was helpful to the extent that it gave jury information about the similar paraphernalia, foil and a spoon, found on Cook's coffee table. Grall's rebuttal testimony about the typical use of digital scales was likewise helpful to the jury. The testimony provided an alternate explanation for the presence of the scales in Cook's home after he testified that he only used scales to measure his personal dosage.

Cook argues that Grall's testimony about the use of scales in illegal drug culture invaded the province of the jury because it was an impermissible opinion on Cook's credibility and an opinion on his intent. He also complains that the additional weight a jury could be inclined to give an expert's testimony improperly bolstered Grall's testimony about the particular facts that occurred in this case. We disagree.

Generally, a witness may not testify in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant "because it 'invad[es] the exclusive province of the [jury].'" *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993) (quoting *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). However, "[t]he fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is

guilty does not make the testimony an improper opinion of guilt." *Id.* at 579 (emphasis omitted). Nor has Cook provided any controlling authority for the proposition that an expert cannot also testify as to facts particular to a specific case because of a "special aura" of credibility that the jury might give an expert.

Grall's testimony about the use of scales by drug dealers did not constitute an opinion on Cook's veracity or his intent. He did not testify that he believed Cook's possession of a scale meant that Cook intended to distribute heroin or that Cook only used the scales to measure drugs for distribution. Rather, he testified that he had never interviewed a drug user that weighed out their own dosage, and that based on his training and experience, scales were used as a tool for weighing drugs for distribution. It was left up to the jury to determine whether it believed Cook's explanation for the presence of the scales was credible. We conclude that the court did not err in admitting Grall's testimony because it was helpful to the jury and did not constitute an opinion on Cook's veracity or intent.

### III. PROSECUTORIAL MISCONDUCT

Cook argues that prosecutorial misconduct violated his right to a fair trial. He contends that the State made an improper argument at closing when it vouched for the credibility of the State's witness and shifted the burden of proof by arguing that the jury must determine that Pickrell was lying in order to acquit Cook. He contends that the argument was prejudicial, and thus he is entitled to a new trial.

The State argues that the prosecutor's closing argument was not improper because it involved reasonable inferences based on the evidence and did not vouch for witness credibility. It

14

contends that the prosecutor's statements did not shift or misstate the burden of proof. We agree with the State.

a. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant bears the burden of showing that the comments were improper and that they were prejudicial. *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020). In assessing whether a prosecutor's closing argument was improper, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

If the defendant fails to object to the improper statement at trial, the error is waived "unless the prosecutor's misconduct was so flagrant and ill[-]intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760–61, 278 P.3d 653 (2012). To prevail, the defendant must show (1) no curative instruction would have removed any prejudicial effect on the jury and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 761. The reviewing court focuses less on whether the State's misconduct was flagrant and ill-intentioned and more on whether the resulting prejudice could have been cured. *Id.* at 762.

"It is misconduct for a prosecutor to state a personal belief as to the credibility of a witness." *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). "Whether a witness has testified truthfully is entirely for the jury to determine." *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010).

Washington courts recognize that it is improper for the State to argue that in order to acquit a defendant or to believe a defendant's testimony, the jury must find that the State's witnesses are

either lying or mistaken. *State v. Vassar*, 188 Wn. App. 251, 260, 352 P.3d 856 (2015); *see also State v. Casteneda–Perez*, 61 Wn. App. 354, 362–63, 810 P.2d 74 ("[I]t is misleading and unfair to make it appear that an acquittal requires the conclusion that the police officers are lying.").

b. Analysis

During closing argument, the prosecutor made the following argument:

He confirmed Detective Pickrell's statement that he knows his son, Cook Junior is selling heroin and that Cook Junior lives in the motor home that's in his front yard, but he all of a sudden says, no, I did not tell Detective Pickrell that I used to sell large amounts of heroin, but I just don't sell as much anymore. In other words, he's still selling, but he's minimizing, I just don't sell as much as I used to. He also testified that he did not tell Detective Pickrell that Senior knows Junior is selling the heroin that he, Senior, is giving Junior. In other words, the two statements out of all those details that he corroborates Detective Pickrell's testimony, but the two details that come down to transfer, meaning I used to sell large amounts, not as much anymore and I know that the heroin I give to Junior, I transfer to Junior, I deliver to Junior, Junior then sells. *So, who is more believable? That's what this comes down to. It's really simple, who's the most believable, is it Detective Pickrell or is it Mr. Cook Senior? Because basically the meaning of the defense case that Detective Pickrell was making up those two statements, he either hallucinated it because he's crazy or he made it up and that's what you need to decide when you go into the jury room, because if you believe Detective Pickrell and find him credible, the defendant is guilty. So, whose the most believable, whose the most credible?*

3 VRP at 485-86 (emphasis added).

Cook specifically challenges the italicized portion of the argument. No part of the challenged portion of the closing argument, however, can be read as a statement of personal belief as to the credibility of a witness. The prosecutor characterized what she believed to be the crux of Cook's defense regarding the statements Cook made to Pickrell but did not express her personal belief in the validity of that argument. The remainder of the challenged portion clearly informs the jury that it has the responsibility to make the determination about witness credibility regarding those statements.

16

Cook also asserts that the prosecutor argued that the jury must determine that Pickrell was lying in order to acquit Cook, and so improperly shifted the burden of proof. This is a mischaracterization of the prosecutor's remarks. The prosecutor did not argue explicitly that in order to acquit Cook, the jury must determine that Pickrell was lying. Rather, the prosecutor pointed out that in his testimony, Cook agreed with certain portions of Pickrell's testimony about his (Cook's) statements but disagreed with the portions that were the most incriminating to him. The prosecutor's argument was that Cook effectively told the jury that Pickrell had not been truthful when he testified about the two disputed statements. The prosecutor then told the jury that it had the responsibility to determine whether Pickrell was credible. This argument is not improper.

Further, it was not improper to argue that if the jury found Pickrell credible, it could conclude Cook was guilty. This remark did not tell the jury that it had to conclude that Pickrell was lying in order to acquit Cook, nor did this remark shift the burden of proof to Cook. Rather, it was a statement of the obvious. We conclude that Cook has not met his burden to show prosecutorial misconduct. *Loughbom*, 196 Wn.2d at 70.

## IV. CUMULATIVE ERROR

Cook argues that the cumulative error resulting from the admission of irrelevant and prejudicial evidence and the prosecutor's allegedly improper argument denied him his right to a fair trial.

Because Cook has failed to establish that the court abused its discretion in admitting Grall's testimony, or that the prosecutor's improper statement amounted to misconduct, we reject his cumulative error argument. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.